IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| PETER KAUFMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) |
| | ) |
| COLUMBIA/HCA HEALTHCARE | ) |
| CORPORATION OF SC d/b/a and, | ) |
| GRAND STRAND REGIONAL | ) |
| MEDICAL CENTER, LLC | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Peter Kaufman, by and through his attorney, Bonnie Travaglio Hunt of Hunt Law, L.L.C., hereby complains against the Defendants, Columbia/HCA Healthcare Corporation of SC d/b/a Grand Strand Regional Medical Center, LLC and Grand Strand Regional Medical Center, LLC as follows:

## NATURE OF THE ACTION

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e, *et seq*.). The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and state law which rights provide for injunctive and other relief for illegal discrimination in employment.

2. This action is brought pursuant to Law of the United States of America.

3. This action is brought pursuant to the laws of South Carolina Human Affairs Commission.

## PARTIES

1

4. The Plaintiff is an individual who resided in the State of South Carolina at all times relevant to this action.

5. At all relevant times to the allegation in this complaint, the Plaintiff was an employee of the Defendants in South Carolina.

6. The Defendant Columbia/HCA Healthcare Corporation of SC is the parent company of Grand Strand Regional Medical Center, LLC. Many of the Plaintiff's benefits were provided through HCA Healthcare Corporation of SC.

7. At all times, relevant to the allegations in this complaint, the Plaintiff was employed at a facility operated by the Defendants in the State of South Carolina.

8. On information and belief, Defendants are an entities conducting business and affecting commerce in the state of South Carolina properly within the jurisdiction of the Court.

9. At all times, relevant to the allegations in this Complaint, the Defendants employed more than 20 persons in the State of South Carolina.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

11. Jurisdiction of this cause arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e-2(a) and Section 2000e-3(a), as amended by the Civil Rights Act of 1991 (CRA Section 91), 42 U.S.C. Section 1981A *et seq.* and the Age Discrimination in Employment Act of 1974 (ADEA), 29 U.S.C. Section 626 *et seq.*

12. Jurisdiction of this Court arises under Title VII 42 U.S.C. 2000 and 42 U.S.C. 1981.

13. The Florence Division is the proper division for this case as this is the location of the Defendants' facility where the Plaintiff worked and the events took place.

## Procedural Prerequisites

14. The Plaintiff filed a charge of discrimination against the Defendant with the South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, sex discrimination, age discrimination, hostile work environment and retaliation.

15. The Plaintiff's first charge of discrimination was filed on January 9, 2022, and set forth the following:

    *I.      That I am a former employee of Grand Strand Medical Center/HCA as an Ethics and Compliance officer.*
    *II.     That HCA/Grand Strand encourages promoting from within.*
    *III.    That I believe that I was discriminated against based on my race (white), Sex (Male), and Age (49).*
    *IV.     That I was subjected to differential treatment and other individuals outside my protected categories.*
    *V.      That in 2018, I applied for an internal position and was denied that position. A younger less qualified female was hired.*
    *VI.     That in 2019, I applied for another position. I was not interviewed, and a lesser qualified female was hired. The lesser qualified female, Kelly Taylor, who was hired for this position later terminated my employment.*
    *VII.    In 2020, I applied for another internal position. Kelly Taylor failed and refused to interview me. A lesser qualified female from outside the organization was hired.*
    *VIII.   That on several occasions I complained regarding the discriminatory nature against Male applicants. I also complained regarding the treatment of an African American employee.*
    *IX.     That younger less qualified individuals have been treated more favorably.*
    *X.      That I and my direct report Shawn Barrett made complaints of discrimination.*
    *XI.     That after we made the complaints regarding differential treatment and discrimination I was terminated.*
    *XII.    That the reasons for discharge were pretextual as the employer was looking for a scapegoat for a costly mistake.*
    *XIII.   That the employer has retaliated against me in violation of Title VII for my participation and making of complaints.*
    *XIV.    That my employer has violated Title VII.*
    *XV.     That individuals who are younger employees were treated more favorably, not bullied, not harassed, and not subjected to discrimination.*
    *XVI.    That I am being treated differently based on my age, race, sex and former complaints of discrimination, harassment, and retaliation.*

> *XVII.   That I have been discriminated against based on my age in violation of the Age Discrimination in Employment Act.*
> *XVIII.  That I have been discriminated against based on my Race in violation of Title VII.*
> *XIX.    That I was subjected to a hostile work environment based on my perceived Race in violation of Title VII and Age in violation of Age Discrimination in Employment Act.*

16. That the plaintiff received a right to sue from the South Carolina Human Affairs Commission on January 17, 2024.

17. That the Plaintiff received a right to sue from the U.S. Equal Employment Opportunity Commission on February 6, 2024.

18. That the Right to Sue set forth the EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

19. That fewer than ninety days have elapsed since the Plaintiff received the Right to Sue on the Plaintiff's charge of discrimination.

## **POLICIES OF HCA HEALTHCARE**

20. Diversity and Inclusion representations:

    *HCA Healthcare is committed to providing equitable access to high-quality care for our patients, fostering a diverse and inclusive workplace for our colleagues, and cultivating and sustaining relationships with suppliers and community partners that broaden our reach and deepen our understanding in the communities we serve. Below, please find more information about our commitments and actions to advance diversity, equity and inclusion across our organization.*

> *Ensuring accountability Executive Diversity Council – Sponsored by Chief Executive Officer, Sam Hazen, and comprised of executive leaders, this cross-functional council leads diversity, equity and inclusion (DEI) initiatives across HCA Healthcare and advises on strategic decisions as we make progress towards our goals and objectives. Division DEI Directors – In addition to our 20-person corporate-based DEI department, led by Chief Diversity Officer, Sherri Neal, we have established division DEI leaders to execute HCA Healthcare's commitment to DEI at the local level. These new roles provide local leadership and direction in developing, implementing, and managing strategic DEI initiatives. Division DEI Councils – The organizational design of HCA Healthcare places our sites of care under the leadership of division teams who oversee geographical markets within the organization. Established in all divisions, our division DEI councils are comprised of division leaders and facility representatives to support the deployment of key DEI strategies and programs across the enterprise.*
>
> *Our commitment to colleagues HCA Healthcare is focused on fostering a culture of inclusion and belonging for our colleagues through workplace programs, education, diverse talent acquisition, engagement and development. Key initiatives include Black Senior Leadership Council – A group of Black senior leaders who meet with CEO Sam Hazen to address topics related to supporting our Black colleagues and communities. Based on the recommendation of this council, HCA Healthcare launched a sponsorship program in 2022 for a cohort of Black colleagues to accelerate advancement in leadership. This is a phased approach that will expand over time to include a broader focus on leaders of color and female leaders. Colleague Networks – Affinity groups that provide colleagues opportunities to convene around shared experiences, including groups for Black colleagues, women, young professionals, LGBTQ+, Hispanic/Latinx, and Asian colleagues, veterans, colleagues with disabilities, and a group focused on mental health and wellness – each with a senior leader serving as executive sponsor. Conscious Inclusion Training – Equips leaders to recognize and mitigate different types of unconscious biases and prepares them with practical day-to-day skills and resources to engage and support our colleagues. As of August 2022, 77% of colleagues at the director level and above completed formal conscious inclusion training. In 2021, all HCA Healthcare colleagues received education on mitigating bias, a crucial component of conscious inclusion, as part of our annual code of conduct refresher training. HBCU/HSI Partnerships – We are investing $10 million into Historically Black Colleges and Universities (HBCUs) and Hispanic-Serving Institutions (HSIs) to support our goal to develop a diverse pipeline of healthcare professionals and leaders. Recent investments include partnerships with Florida A&M University (FAMU), Florida International University (FIU) the University of Texas at El Paso (UTEP), Tennessee State University and Fisk University. Diverse Talent Acquisition – We are committed to strengthening the diversity of our talent pool and supporting the advancement of people of color and women in leadership. As of July 2022, people of color represent 39% of new hires into management and supervision roles at HCA Healthcare. Additionally, we continue to diversify our*

*class of emerging leaders for the Executive Residency Program, with 40% of our 2022 cohort comprised of people of color and 40% comprised of women.*
*BRAVE Conversations – Our award-winning BRAVE (Bold, Relevant, Authentic, Valuable and Educational) Conversations program provides colleagues with opportunities to discuss complex topics through a safe, immersive dialogue experience. Thousands of colleagues have attended BRAVE Conversations over the past five years on topics such as mental health, celebrating LGBTQ+ pride and advocating for change, building bridges with the deaf and hard-of-hearing community, and honoring our veterans. Military Affairs – In 2022, HCA Healthcare was recognized with the Best for Vets award for the third consecutive year from Military Times and as a military friendly employer by VIQTORY for the 12th consecutive year. In addition, in 2021, HCA Healthcare and affiliated hospital Grand Strand Medical Center were awarded the prestigious Secretary of Defense Employer Support Freedom Award, the highest recognition given by the U.S. Government to employers for their support of their employees who serve in the National Guard and Reserve. Since 2012, we have hired more than 40,000 veterans, active-duty personnel and military spouses.*

## FACTUAL BACKGROUND

21. That the Plaintiff is a resident of the United States and at all relevant times the Plaintiff resided in South Carolina.

22. That the Plaintiff is a licensed attorney and has practiced law in the State of South Carolina since 2011. The Plaintiff graduated from the Charleston School of Law in 2010. That the Plaintiff has extensive experience in the area of Labor and Employment Law.

23. That the Plaintiff was hired by the Defendants as the Ethics and Compliance Officer on October 31, 2016. The Defendants have extensive policies regarding Ethics and Compliance, including but not limited policies and procedures regarding development, Code of Conduct, Business Courtesies to Potential Referral Sources, Ethics and Compliance Committee, Code of Conduct regarding distribution and Training, Records Management, Ethics and Compliance Program Contracts, Conflicts of Interest, Gifts, Vendor Relations, Educational Funding, and a Non-Retaliation Policy.

24. The Plaintiff lived in Charleston but accepted the job at Grand Strand. The Plaintiff loved the position and regularly worked late into the night, weekends, and holidays to accomplish all requirements of the position. The Plaintiff regularly arrived at his office between 5:00 and 6:00 am.

25. In 2018, the Plaintiff applied for the position of Ethics and Compliance officer at Trident Hospital Location of HCA. The Plaintiff was not interviewed or even considered for the position. An all women panel conducted the interview and hiring process. The panel selected a female who was less than 40 for the position and external to the Company.

26. In 2019, the Plaintiff applied for a position in Nashville with the ADA Director, Sherri Neal, an African American woman. The Plaintiff was not hired for the position and an external, woman candidate was ultimately hired.

27. The Plaintiff met or exceeded expectations during his employment with the Defendants during his employment at Grand Strand Medical Center.

28. In August of 2019, the Plaintiff received the highest score on a company-wide audit/review a 91%. Along with receiving the highest score, the Plaintiff received dozens of accolades from corporate employees, including Chuck Hall and Ms. Whalen.

29. As a reward for receiving the highest score in his Division, the Plaintiff was appointed the Director of the Equity and Diversity Council. The Plaintiff was also given the unofficial title with the hospital of General Counsel in addition to his Ethics and Compliance Officer.

30. As a result of the Plaintiff's promotion, he received a salary increase to $111,0000.00.

31. The Plaintiff had one direct report, Shawn Barrett, an African American female over the age of forty.

32. The Plaintiff, along with several other members of administration, selected Shawn Barrett to serve as a member of the Equity, Diversity, and Inclusion Council for the Facility.

33. The Plaintiff considered Ms. Barrett to be an exemplary employee.

34. In 2020, COVID-19 became a prevalent concern in the hospital and the hospital granted wide latitude for non-essential personnel to either work remotely or if they stayed in their office and did not need to comingle with the patient population and stay off the unit floors.

35. In 2020, the Plaintiff applied for the position of Director of Physician Services with the Charleston Division. The Plaintiff was denied the position, and an external woman candidate was hired for the position.

36. In early 2021, the Plaintiff was asked to move his office to an office site location directly behind the main hospital building. The Plaintiff readily agree to facilitate the O.R. expansion. The building where the Plaintiff's office was located there was no badge swipe technology.

37. In 2021, Ms. Shawn Barrett reported differential treatment based on her race at the hands of Caucasian females within the hospital. Specifically, other Caucasian females would make negative commentary regarding African Americans being late, lazy, and not coming to work. Particularly a younger Caucasian female by the name of Sherri Mountain who wanted the Plaintiff's position but instead was hired as an Executive Assistant would regularly make African American jokes regarding the Plaintiff and other employees of the hospital. That Sherri Mountain was an avid Black Lives Matter movement hater and regularly made negative commentary in the office regarding African Americans, and Black Lives Matter.

38. As a result of Ms. Barrett's report, the Plaintiff reported the actions to CEO Mark Sims and the VP of Human Resources Carly Pasquini. Neither the CEO nor the VP of Human Resources acted on the Plaintiff's concerns regarding the discrimination.

39. In the Summer of 2021, the Plaintiff reported to his direct supervisor, CEO Mark Sims and his Division ECO, Kelly Taylor three concerns, to include but not limited to:

    a. $1 million plus billing discrepancy based on contract inconsistencies with a Vascular Surgeon;

    b. The Director of GME, Kathleen Mattis, was failing to report various gifts to the hospital residents in accordance with the "Gifting" Policy; and

    c. The Plaintiff again renewed his concerns over retaliatory treatment and racial discrimination perpetrated against Shawn Barrett, and the failure of the Defendants to handle the discrimination.

40. The Plaintiff reported a hostile work environment being inflicted upon Ms. Barrett again in August of 2021. The Plaintiff specifically complained that Sherri Mountain and Michele Walker, Ms. Barrett's co-workers, were creating a hostile work environment based on her race.

41. After the Plaintiff's Report, an anonymous complaint was made to Kelly Taylor that the Plaintiff was failing to perform his position.

42. In September of 2021, the Plaintiff again complained that HR and the CEO were failing to act, and this inaction was a violation of the law and the policies and procedures of the Defendants.

43. On September 20, 2021, the Plaintiff was ambushed by Taylor and Pasquini and asked about the GME Director's questionable billing practices and two physician contract

9

matters. During the meeting Taylor accused the Plaintiff of representing employees in legal matters against the hospital and asked who he was representing, which was a violation of the attorney-client privilege. The Plaintiff operated his own law firm in Charleston which was fully disclosed upon hire, and had never been an issue during his employment.

44. The Plaintiff immediately requested all information regarding these matters. When he familiarized himself with the actual facts, he proceeded to report the matters within HCA's internal structure and transparently discussed them with Sims, Taylor, Pasquini and CFO Robert Grace. The Plaintiff received emails from the Operations Counsel that there was no wrongdoing on his part specifically no Stark Law implication and that the matters should be directed to PSG for resolution.

45. Taylor further questioned the Plaintiff whether he had been attending monthly MDT meetings (Diversion Team). The Plaintiff regularly attended all meetings during his tenure which Ms. Taylor was aware of. The Plaintiff attended one meeting by phone due to a medical issue with his minor child. Taylor also alleged that the Plaintiff was failing to conduct his one-hour long weekly Ethics & Compliance new hire training PowerPoint presentation, which he had always done for nearly five (5) years. The Plaintiff responded that he was only given 45 minutes by Administration and not the hour long time frame to cover all the topics.

46. At the end of the meeting, the Plaintiff asked if Taylor and Pasquini believe the allegations to be true why they were not putting him on a Performance Improvement Plan ("PIP") in accordance with policy. The Plaintiff further pointed out that there were several women employees that were engaged in provable egregious misconduct instances who were placed on PIPs; and, as a result, why could the Plaintiff not be treated the same.

47. The Defendants suspended the Plaintiff on September 20, 2021 at the end of the meeting. The Defendants also suspended the Plaintiff's direct report, Shawn Barrett.

48. The Defendants allegedly conducted an investigation and terminated the Plaintiff on September 24, 2021.

49. That the Plaintiff properly performed all aspects of his position. That each of the allegations of the Defendants were pretextual and false.

50. That on September 24, 2021, the Defendants also terminated the Plaintiff direct report Shawn Barrett for pretextual reasons. That the Vice President of Human Resources, Carly Pasquini (a younger Caucasian Female) alleged that Ms. Barrett was terminated for conduct, behavior, performance and policy violations.

51. The Plaintiff participated in reports of race, age, and sex discrimination.

52. The Plaintiff suffered discrimination based on his reports of race discrimination, age discrimination, retaliation for his complaints and hostile work environment in violation of the Defendants' policies and procedures and the law.

53. That Defendants wrongfully discriminated against the Plaintiff in violation of Title VII, 42 U.S.C. 2000, 42 U.S.C. 1981, and the Age Discrimination in Employment Act.

54. That each of the reasons presented by the Defendants was pretextual.

55. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which he should be compensated.

56. That the Defendants are the direct and proximate cause of injury to the Plaintiff.

57. That the Plaintiff was issued certain policies and procedures by the Defendants.

58. The Defendants violated the policies and procedures by failing to follow the actual policies in place against discrimination, hostile work environment and retaliation.

59. Defendants engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff in retaliation for his complaints regarding race discrimination in violation of Title VII and 42 U.S.C. 1981.

60. That the Plaintiff reported race and sex discrimination.

61. That the Defendants' actions towards the Plaintiff violated the law based on sex discrimination, age discrimination, hostile work environment, and his complaints regarding race discrimination.

62. That the Defendants are the direct and proximate cause of damage to the Plaintiff.

63. That, as a direct and proximate result of the Defendants' intentional unlawful actions towards the Plaintiff based on the Plaintiff's sex, the Plaintiff:

    a. suffered severe emotional distress;

    b. suffered future lost wages and future lost benefits;

    c. suffered economic damages;

    d. Loss of employment;

    e. Loss of Future employment;

    f. incurred attorney fees for this action;

    g. incurred costs of this action; and

    h. will incur future attorney fees and costs.

64. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees

previous, future, and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

65. That the Defendants evaluated the Plaintiff differently based on his complaints regarding sex discrimination and race discrimination.

66. That the Plaintiff's employer discriminated against the Plaintiff based on his sex for failing to transfer or hire him for other positions when it hired less qualified external females.

67. Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks compensatory damages including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

68. Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks to recover punitive damages from Defendant for discriminating against Plaintiff with malice or with reckless indifference to Plaintiff's federal protected rights.

69. Plaintiff seeks all back pay and fringe benefits to which he is entitled under 29 U.S.C. Section 626(b), as well future damages and liquidated damages under the act.

70. As Plaintiff is seeking damages under 42 U.S.C. 1981A and 29 U.S.C. Section 626(b) Plaintiff also demands a jury trial as to all claims properly tried to a jury pursuant to 42 U.S.C. Section 1981(A)(c)(1) and pursuant to 29 U.S.C. Section 626 (c)(2).

71. Pursuant to 42 U.S.C. Section 1988(c) and 42 U.S.C. Section 2000e-5(k), Plaintiff seeks his attorney's fees in bringing this action, including expert witness fees, and further seeks his costs associated with bringing this action pursuant to 28 U.S.C. 1920 of the Federal Rules of Civil Procedure, along with prejudgment and post-judgment interest pursuant to the law.

**FOR A FIRST CAUSE OF ACTION**
**RETALIATION FOR COMPLAINTS REGARDING RACE DISCRIMINATION IN**
**VIOLATION OF TITLE VII AND 42 U.S.C. 1981 AGAINST**
**HCA d/b/a GRAND STRAND MEDICAL CENTER**

72. That Paragraphs one (1) through seventy-one (71) are hereby incorporated verbatim.

73. That the Plaintiff participated in a protected act when he reported racial discrimination, racial harassment, and hostile work environment.

74. The Plaintiff clearly reported the discrimination, harassment, and retaliation by Caucasian females against his direct report, Shawn Barrett.

75. The Plaintiff reported that the Defendant was failing to correct the behavior and failing to follow its own policies and procedures regarding Diversity and Inclusion, Ethics and compliance.

76. That the Plaintiff was terminated for his complaints.

77. That the reasons provided by the Defendant as the reasons for the Plaintiff's termination was pretextual and created by others who discriminated against Barrett and the Plaintiff.

78. The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

79. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

80. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

81. That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages,

consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII and 42 U.S.C. 1981.

## FOR A SECOND CAUSE OF ACTION
## SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT COMPLAINTS AGAINST
## HCA d/b/a GRAND STRAND MEDICAL CENTER

82. That Paragraphs one (1) through eighty-one (81) are hereby incorporated verbatim.

83. That the Plaintiff was an employee according to the law of the State of South Carolina, Federal Law including but not limited to Title VII.

84. The Defendant are employers within the applicable State and Federal Laws.

85. The Plaintiff was subjected to differential treatment based on his sex. Other female employees were given preferential treatment in job assignments, transfers, hiring, discipline and treatment overall.

86. That the Plaintiff was not hired for several positions based on his sex.

87. The Plaintiff was not treated fairly or equally as other younger female employees.

88. That the Plaintiff complained of discrimination based on his sex. The Plaintiff was not hired for several positions due to his sex. The Defendant has a culture of preferring women in positions, and it is rampant in South Carolina.

89. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of promotion, loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which he should be compensated.

90. That the Defendant is the direct and proximate cause of injury to the Plaintiff discriminating against him based on his sex.

91. That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney fees, the costs of this action and all other damages available pursuant to Title VII.

**FOR A THIRD CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT**
**AGAINST**
**HCA d/b/a GRAND STRAND MEDICAL CENTER**

92. That Paragraphs one (1) through ninety-one (91) are hereby incorporated verbatim.

93. That the Plaintiff was an employee of the Defendant.

94. That the Defendant was an employer in accordance with Title VII and 42 U.S.C. 1981.

95. Each and every action taken by the Defendants' employees instituted a work environment that no reasonable person would subject themselves to. The hostile work environment was retaliatory for the Plaintiff's complaints regarding race discrimination, sex discrimination and retaliation. The Hostile work environment was as a result of the Plaintiff complaints, and challenges to follow the law.

96. That the Defendants subjected the Plaintiff to a hostile work environment.

97. That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

98. The Plaintiff was subjected to discrimination based on his sex.

99. That the Defendant failed and refused to address the situation.

100. As set forth above the Plaintiff was rejected for several positions and subjected to harassment by management.

101. That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's Sex.

102. That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

103. That the Plaintiff has been damaged as a result of the Defendant work environment.

104. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

**FOR A FOURTH CAUSE OF ACTION**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**
**AGAINST**
**HCA d/b/a GRAND STRAND MEDICAL CENTER**

105. That paragraphs one through one hundred and four (104) are hereby incorporated verbatim.

106. That the Plaintiff was subjected to Age Discrimination while employed with the Defendant.

107. That the Defendant, treated the Plaintiff significantly differently based on his age. That younger individuals were permitted to have more favorable job assigments, more favorable tours, returned to work appropriately, and not disciplined.

108. That the Plaintiff was not selected for 3 different positions based on his age.

109. That the Defendant, treated the Plaintiff significantly different than it treated younger employees. That the Defendant did not discipline younger employees for actions that would have been terminable offenses. That the Defendant treated younger employees more favorably with different discipline.

110. The Defendant terminated the Plaintiff from his employment in retaliation for his complaints regarding sex and age discrimination.

111. That the Defendant's actions towards the Plaintiff violated the law.

112. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

113. That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's age, the Plaintiff:

      a. suffered severe emotional distress;

      b. suffered future lost wages and future lost benefits;

      c. suffered economic damages;

      d. Loss of employment;

      e. Loss of Future employment;

      f. incurred attorney fees for this action;

      g. incurred costs of this action; and

      h. will incur future attorney fees and costs.

114. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

## **PRAYER FOR RELIEF**

WHEREFORE plaintiff prays that this Honorable Court:

A. Accept jurisdiction over this matter, including the pendent claim;

B. Empanel a jury to hear and decide all questions of fact;

C. Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D. Award to plaintiff compensatory and consequential damages against the defendant;

E. Award to plaintiff punitive damages against the defendant for their malicious and spiteful pattern of age, sex, and race discrimination;

F. Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of the Title VII and 42 U.S.C. 1981;

G. Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

H. Award all damages available to the Plaintiff pursuant to Federal and State Law;

I. Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in sexual discrimination, disparate treatment or retaliation against plaintiff and

J. Enter any other order the interests of justice and equity require.

HUNT LAW LLC

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
HUNT LAW LLC
4000 Faber Place Drive, Suite 300
North Charleston SC 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709

Dated: April 9, 2024